IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

LAURA M. SALDANA                                                              PLAINTIFF

v.                          Civil No. 2:14-cv-02212-PKH-MEF

CAROLYN W. COLVIN, Commissioner
Social Security Administration                                                DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Laura Saldana, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claims for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.      Procedural Background:**

Plaintiff filed her applications for DIB and SSI on May 24, 2012, alleging an onset date of May 16, 2012, due to pain in her residual lower back and legs pain following disk surgery in 2010, bilateral foot pain, and a thyroid problem. Tr. 72-73, 142-154, 182, 197-198, 211-215, 218-222. The Commissioner denied Plaintiff's applications initially and on reconsideration. Tr. 56-85. An

Administrative Law Judge ("ALJ") held an administrative hearing on June 4, 2013.  Tr. 22-55.  Plaintiff was both present and represented by counsel.

At the time of the hearing, Plaintiff was 46 years old and possessed a high school education.  Tr. 28.  The Plaintiff also possessed a cosmetology "diploma" for the completion of a one-year training course in Mexico.  Tr. 28-29.  Plaintiff had past relevant work ("PRW") experience as a retail store manager, retail sales clerk, and grocery cashier.  Tr. 16, 183, 189-196.

On August 23, 2013, the ALJ concluded that the Plaintiff's back pain status post left L5-S1 pipeline discectomy, bilateral leg pain, and hallux abductovalgus of the left foot status post Reverdin bunionectomy were severe, but concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  Tr. 12-13.  He determined that the Plaintiff could perform a full range of light work including frequent operation of bilateral foot controls.  Tr. 13.  With the assistance of a vocational expert, the ALJ found the Plaintiff could perform her PRW as a retail store manager, retail sales clerk, and grocery cashier.  Tr. 16-17.

The Appeals Council denied Plaintiff's request for review on August 8, 2014.  Tr. 1-4.  Subsequently, Plaintiff filed this action.  ECF No. 1.  This case is before the undersigned for Report and Recommendation.  Both parties have filed appeal briefs, and the case is now ready for decision.  ECF Nos. 13, 14.

**II.**     **Applicable Law:**

This court's role is to determine whether substantial evidence supports the Commissioner's findings.  *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011).  We must affirm the ALJ's decision if the record contains substantial evidence to support it.  *Blackburn v. Colvin*,

761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id.*

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work

experience in light of her residual functional capacity.  *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

**III.**     **Discussion:**

On appeal, the Plaintiff contends that the ALJ made the following errors:  1) failed to develop the record fully; 2) improperly discredited her subjective complaints; and, 3) failed to incorporate all of the Plaintiff's impairments into his RFC determination.  The Court has reviewed the entire transcript.  The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and are repeated here only to the extent necessary.

**A.**     **Develop the Record:**

In her first issue, the Plaintiff insists that because her true work related restrictions are not evident from the record, the ALJ should have sought further clarification regarding the severity of her impairments.  The ALJ does owe a duty to a claimant to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts.  *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).  However, the ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record.  *Whitman v. Colvin*, 762 F.3d 701, 707 (8th Cir. 2014) (quoting *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994).  While "[a]n ALJ should recontact a treating or consulting physician if a critical issue is undeveloped," "the ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010) (quotation, alteration, and citation omitted).

The Plaintiff contends that she is unable to work due to pain in her lower back, legs, and feet.  As a result, she alleges an ability to sit 30 to 40 minutes at a time, stand for 10 minutes, and walk only short distances.  Tr.  43-45.  Plaintiff also reported, however, that she lives in a second

4

floor apartment, which implies the ability to climb stairs. Tr. 29-30. Further, she reported the ability to perform the following activities: care for her personal hygiene, clean her room, prepare meals, perform light housework, do her laundry, go outside twice weekly, drive a car short distances, shop in stores for groceries, handle her finances, watch television, talk on the phone, and visit her parents weekly. Tr. 29-30, 200-207.

The record reveals that the Plaintiff began suffering lower back pain in January 2009, after working out on a stair-stepper machine. Tr. 331. An MRI conducted in September 2009 revealed a prominent left paracentral disk herniation into the left paracentral region with mass effect on the left side of the thecal sac and the left L5 level nerve root in the left lateral recess. Tr. 321. After physical therapy was unsuccessful, Dr. Arthur Johnson performed a left L5-S1 level pipeline lumbar discectomy in February 2010. Tr. 276-286, 322-324, 329. In April 2010, Dr. Johnson noted that she was doing "very well." Tr. 327. She complained of only occasional left hip and leg pain, reporting significant improvement over her pre-surgery pain. Dr. Johnson released her to return to work on April 8, 2010, with no lifting greater than 15 pounds for approximately one month. Thereafter, he recommended a gradual increase in activity, as tolerated. Plaintiff did not return for follow-up until March 3, 2011. Tr. 325-326. At that time, Dr. Joseph Queeney, an associate of Dr. Johnson's, noted that the Plaintiff had missed several follow-ups. However, she had a normal gait, normal strength, and good motor function. The only abnormalities noted were absent patellar and Achilles deep tendon reflexes and left buttock pain with left straight leg raise. X-rays revealed well maintained alignment of the lumbar vertebral bodies. Some disk space narrowing was apparent at the L5-S1 level and straightening was evident in the lumbar spine. Dr. Queeney diagnosed her with resolved left lumbar radiculopathy status post left L5-S1 pipeline

discectomy. He noted that she had returned to full-time work and took muscle relaxers as needed. Dr. Queeney then prescribed Robaxin and released her from his care.

A few days later, Plaintiff presented in Dr. Vikki Sutterfield's office with complaints of headaches, fatigue, joint pain, back pain, and neck pain. Tr. 302-305. She also indicated that she had not taken her thyroid medication in a month because it caused her neck to swell. Although she exhibited pain with motion in the back, Dr. Sutterfield noted no joint tenderness, deformity, or swelling and a full range of motion. The doctor diagnosed menopause, hypothyroidism, headaches, and back pain. She advised her to continue her current medications without change.

In May 2011, the Plaintiff underwent bunion surgery on her left foot. Tr. 233-236, 257, 261. Dr. John Werner's notes reveal that the surgery was a success. Three days after surgery, the Plaintiff indicated that she was very happy with the results. Tr. 260, 263, 267. At her next follow-up, she was wearing the walking boot prescribed and walking around the house. Tr. 259, 263. X-rays revealed good alignment of both the hallux and capital fragment. A week later, Dr. Werner indicated that she was doing "extremely well." Tr. 258, 263, 266. She had a full range of motion in the first metatarsal phalangeal joint with no swelling or erythema. On June 9, 2011, Plaintiff reported no problems since her surgery. Tr. 256, 263, 265. She was wearing the boot, as well as the splint, and denied pain. Dr. Werner documented a minor amount of swelling related to recent activity. The Plaintiff admitted to "going strong," and Dr. Werner advised her to slow down, elevate her foot more, and continue using the splint and boot. At her next follow-up on June 30, 2011, Plaintiff had a full range of motion in her left foot with no discomfort or swelling. Tr. 255, 262, 264. She voiced no problems and reported the resumption of full activity.

On February 1, 2012, the Plaintiff presented at Dr. Sutterfield's office with complaints of fatigue and pain in her lower back. Tr. 248-250, 306-309. Interestingly, Dr. Sutterfield's notes

6

indicate that she did not perform a back or a musculoskeletal exam at this time. Further, she made no changes in the Plaintiff's medication regimen.

On April 1, 2013, Dr. Sutterfield performed a physical exam at the Plaintiff's bequest. Tr. 310-313. She noted that the Plaintiff was applying for disability secondary to lower back and leg pain. However, her notes also indicate that the Plaintiff denied back, neck, or joint pain and swelling. On examination, she documented "bilateral back pain" with motion. Motor, sensory, and neurological exams were all unremarkable. Dr. Sutterfield diagnosed the Plaintiff with back pain with radiculopathy, stable hypothyroidism, and gastroesophageal reflux disease and made no medication changes. Dr. Sutterfield also noted that the Plaintiff was unable to work.

This same date, Dr. Sutterfield completed a medical source statement. Tr. 288-290. She indicated that she had been treating the Plaintiff since "before 2010" for a herniated lumbar disk at the L5-S1 level status post lumbar discectomy with spinal monitoring. Dr. Sutterfield opined that the Plaintiff could sit for two hours per eight-hour workday, stand for two hours, and walk for one hour. Further, Dr. Sutterfield found she could not use her feet for repetitive movements as in operating foot controls; could not use her hands for pushing and pulling; could occasionally bend and reach above her head; and, could never squat, crawl, climb, stoop, crouch, kneel, be exposed to unprotective heights, or work around moving machinery. Dr. Sutterfield also indicated that the Plaintiff would need unscheduled breaks, a sit/stand/walk at will option, and would miss more than four days of work per month due to her impairments and treatment.

After reviewing the evidence, the undersigned finds sufficient evidence upon which the ALJ could base his decision. The overall record does not support the extent of limitation assessed by Dr. Sutterfield. As such, we find no reason for the ALJ to recontact her to clarify her

7

assessment. *See Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012) (conclusory checkbox form has little evidential value when it cites no medical evidence and provides little or no elaboration).

Our review of the record also fails to reveal any issues that require development or further development of the record. Accordingly, we find that the ALJ was not obligated to recontact Dr. Sutterfield or to order consultative examinations.

  **B.** **Subjective Complaints:**

The Plaintiff also argues that the ALJ failed to properly assess her credibility. The ALJ is required to consider all the evidence relating to the Plaintiff's subjective complaints, including: 1) Plaintiff's daily activities; 2) the duration, frequency, and intensity of her pain; 3) precipitation and aggravating factors; 4) dosage, effectiveness, and side effects of her medication; and, 5) function restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). In so doing, the ALJ must also consider the claimant's prior work record, observations made by third parties, and the opinions of treating and examining physicians. *Polaski*, 739 F.2d at 1322.

An ALJ may not discount the Plaintiff's subjective complaints solely because the medical evidence fails to support them. *Id*. However, he "may disbelieve subjective reports because of inherent inconsistencies or other circumstances." *Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007) (quotation and citation omitted). The Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

The ALJ discredited the Plaintiff's subjective complaints for the following reasons: 1) the Plaintiff's back and foot impairments improved following surgery; 2) following her surgeries in 2010 and 2011, the Plaintiff's treatment was conservative; 3) the Plaintiff was somewhat non-compliant with her follow-up visits status post laminectomy and failed to take her thyroid

8

medication as prescribed; 4) the objective evidence did not support the Plaintiff's subjective complaints; 5) the Plaintiff failed to seek out consistent treatment for her alleged symptoms; and, 6) the Plaintiff's activities of daily living suggest she is capable of performing more activities than she alleges. *See Patrick v. Barnhart*, 323 F.3d 592, 596 (8th Cir. 2003) (holding if an impairment can be controlled by treatment or medication, it cannot be considered disabling); *Moore v. Astrue*, 572 F.3d 520, 524-525 (8th Cir. 2009) (holding conservative treatment with over-the-counter medication and limited use of prescription medication inconsistent with disabling pain); *Brown v. Barnhart*, 390 F.3d 535, 540-541 (8th Cir. 2004) (holding that the ALJ properly discounted treating physician's opinion where record showed the plaintiff was non-compliant with prescribed treatment without good reason); *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (lack of supporting medical evidence is one factor that may be considered in assessing credibility); *Edwards*, 314 F.3d at 967 (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment); *Id*. at 966 (finding that the claimant's ability to shop, drive short distances, attend church, and visit relatives was inconsistent with her assertion of disabling pain); *Lawrence v. Chater*, 107 F.3d 674, 676 (8th Cir. 1997) (finding that the claimant's ability to "dress and bathe herself," and "do some housework, cooking, and shopping" contradicted her "testimony regarding the severity of her pain and disability"). After reviewing the entire record, we agree with the ALJ's reasoning.

Records reveal that the Plaintiff did not seek out consistent treatment for any of her impairments. Following her surgery in 2010, the Plaintiff mentioned back related symptoms on only three occasions. Four days after Dr. Queeney's March 2011 notation that her impairment was fully resolved, Dr. Sutterfield noted some pain with motion in her back. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an

9

ALJ may consider). However, she continued her medications without change. Her next complaint of back pain did not occur until February 2012, at which time Dr. Sutterfield failed to perform a back or musculoskeletal exam. And, again, she continued her medications without change. The Plaintiff voiced her final complaint of back pain over one year later, on April 1, 2013, when she presented in Dr. Sutterfield's office for completion of her disability paperwork. At that time, Dr. Sutterfield noted only bilateral back pain with motion, yet she concluded that the Plaintiff could no longer work. She also assessed her with significant limitations that are not supported by the overall record. *Hacker v. Barnhart,* 459 F.3d 934, 937 8th Cir. 2006) (declining to give controlling weight to treating physician's opinion because treatment notes were inconsistent with her assessment).

As for the Plaintiff's foot pain, the record reveals that she returned to full activity within one month of her bunionectomy, reporting no pain, discomfort, or swelling. Further, we can find no evidence of treatment for heel spurs during the relevant period. *See Forte*, 377 F.3d at 895.

The Plaintiff contends that financial hardship prevented her from obtaining consistent medical treatment. However, there is no evidence in the record to suggest that any doctor, clinic, or hospital denied the Plaintiff treatment due to her financial situation. The record is also void of evidence to show that she sought out treatment from facilities offering free or low cost medical treatment to indigent or low-income individuals. *See Murphy v. Sullivan,* 953 F.2d 383, 386-87 (8th Cir. 1992) (lack of evidence that claimant attempted to find any low cost or no cost medical treatment for alleged pain and disability is inconsistent with claim of disabling pain). As such, we cannot say that her financial hardship excused her failure to seek out treatment.

The Plaintiff's allegation that the ALJ did not consider her medication side effects is also misplaced. The ALJ specifically noted her testimony that the Percocet caused drowsiness. Tr. 14,

4. Unfortunately, the medical record contains no evidence to show that the Plaintiff reported any medication side effects to her doctors. *See Zeiler v. Barnhart*, 384 F.3d 932, 936 (8th Cir. 2004) (alleged side effects were properly discounted when Plaintiff made minimal to no complaints of side effects to her physicians).

Accordingly, the undersigned concludes that the ALJ properly evaluated the Plaintiff's subjective complaints under *Polaski*, and provided good reasons for his credibility determination.

**C.     RFC:**

Lastly, the Plaintiff contests the ALJ's RFC determination. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545. A disability claimant has the burden of establishing her RFC. *Vossen v. Astrue,* 612 F. 3d 1011, 1016 (8th Cir. 2010). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Miller v. Colvin*, 784 F.3d 472, 479 (8th Cir. 2015) (citing *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

The ALJ determined that the Plaintiff could perform a full range of light work, including frequent use of both feet to operate foot controls. In so doing, the Plaintiff insists that the ALJ improperly discredited the opinion of her treating doctor, Dr. Sutterfield, who placed significant

limitations on her activities. In reviewing Dr. Sutterfield's statement, however, we note that it is both inconsistent with her treatment records and with the records of the other physicians who treated the Plaintiff during the relevant time period. *Juszczyk v. Astrue*, 542 F.3d 626, 632 (8th Cir. 2008) (holding that the ALJ properly discounted a treating physician's opinion when it was inconsistent with his own treatment notes, as well as other medical opinions). For instance, the medical records, including those of Dr. Sutterfield, fail to document pain or range of motion limitations in the back or feet that would limit the Plaintiff beyond light work. Dr. Queeney released her from care in March 2011, noting full resolution of her lumbar radiculopathy. Thereafter, Dr. Sutterfield documented bilateral back pain and pain with motion on approximately three occasions. *See Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (while Plaintiff may experience some discomfort due to her impairments, the real issue is whether the impairments are severe enough to cause functional limitations and prevent work activity). She documented no other physical findings and made no medication adjustments. Nonetheless, Dr. Sutterfield opined that the Plaintiff was disabled. Tr. 312.

The record also reveals that the Plaintiff's foot pain resolved following her bunionectomy. Dr. Sutterfield made no mention of a foot impairment in her medical source statement or her treatment notes, yet she concluded that the Plaintiff could not use her feet for repetitive movements such as operating foot controls. This strongly suggests that Dr. Sutterfield was basing her assessment off the Plaintiff's subjective complaints, rather than the objective medical evidence. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (holding that the ALJ may give less weight to a medical opinion that is based largely on subjective complaints rather than on objective medical evidence); *Vandenboom v. Barnhart*, 421 F.3d 745, 749 (8th Cir. 2005) (holding that the record

supports ALJ's conclusion that treating physician's diagnosis and impressions were based largely on the plaintiff's subjective complaints with little objective medical support).

The Plaintiff's ability to return to her job at Sally's Beauty Supply following her surgeries in 2010 and 2011 is further evidence of her ability to perform some work-related activities. Although she did stop working in 2012, we can find no objective evidence to indicate that her condition deteriorated at that time. *Goff v. Barnhart*, 421 F.3d 785, 792-793 (8th Cir. 2005) (fact that Plaintiff worked with the impairments for over three years after her strokes, coupled with the absence of evidence of significant deterioration in her condition, demonstrate the impairments are not disabling). Instead, Dr. Sutterfield's failure to make changes to her treatment regimen suggests that her condition had stabilized.

Although the Plaintiff asserts deficits in concentration, persistence, and pace related to her fatigue and pain, the evidence lends no support to these claims. She did report fatigue, but she failed to assert or exhibit any symptoms suggestive of deficits in concentration, persistence, or pace.

Accordingly, the undersigned finds substantial evidence to support the ALJ's RFC determination.

### IV.     Conclusion:

Based on the foregoing, we recommend affirming the decision of the ALJ and dismissing the Plaintiff's Complaint.

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  We remind the parties**

**that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 25th day of August, 2015.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE